Fred M. Swartz
vs. } Law No. 67574.
Cesidio Leone et al.

March 20, 1928

BAKER, J. Jury trial waived.

This case was tried with Law No. 59427, in which the parties are reversed.

The facts leading up to the present litigation are fully stated in the rescript filed in the aforesaid case. In this case the plaintiff, the owner of the apartment house in question, is seeking to recover damages from the defendants, the contractors who built the house. The claim is in three parts. First, for loss of rents; second, for general depreciation or loss of value in the house, and third, for faulty workmanship covering certain specific parts of the work.

The contract into which the parties entered provided that the house should be completed in five months. There is some dispute in the testimony as to when the work actually was done. The defendants say they were about a month late; the plaintiff claims they were between two and three months

beyond the time provided for in the contract. The plaintiff says that because of this fact he was unable to rent his apartments until approximately June 1924 and that he lost a large sum in rentals.

The Court, after considering the matter carefully, is not disposed to support the plaintiff's contention in this regard. In the first place, the matter of rentals is more or less problematical and speculative, and in the second place, the testimony shows that some of the delay was due to the plaintiff himself. For example, it appears that while the work was progressing some time was lost while the question of a sun parlor or porch was being considered. Further, apparently the plaintiff made frequent visits out of town which had some tendency to delay the contractors, and also, it seems quite clear that owing to changes in the interior finish some time was lost. On the whole, the Court can not say that the plaintiff has proved by a fair preponderance of the testimony that any material loss of definite rentals was due to the defendant's actions in the matter.

The plaintiff placed on the stand a witness who testified that in his judgment, owing to the manner in which the house was constructed and due chiefly to structural defects, there was a loss in value or depreciation in the house of $7,000.

Taking into consideration all the testimony in the case, this sum appears to the Court to be extraordinarily large. A witness for the defendants testified that in his opinion there would not be more than $500 difference in the value of the plaintiff's house and of the Kane house. It appears in testimony that the contract price of the Kane house was $30,000 and that of the plaintiff's house $28,000. Further, the plaintiff's witness above referred to evidently placed considerable importance on the fact that the outside brick on the plaintiff's house was different and not as pleasing to the eye as the brick in the Kane house. There is no question but what the brick is different. When the contract in question was signed, it was discovered that the defendants could not procure brick exactly like the brick used on the exterior of the Kane house and a provision regarding that situation was made in the contract. Further, while perhaps the plaintiff did not like the brick in his house as well as in the Kane house, nevertheless, after the situation was explained he apparently accepted it. In the judgment of the Court, under the testimony presented, no such large sum for loss of value or depreciation as the plaintiff claims can be allowed. This claim is made obviously on the theory that there are serious structural defects in the house which it would cost more to replace or repair than it would to figure the lessened value.

The Court does not believe this to be the situation, however, in the case at bar. It thinks that the plaintiff can recover his damage by reason of defective or faulty work in certain specific points connected with the construction of the house.

This brings the Court to the plaintiff's third point in connection with his claims for damages. He placed on the stand certain very credible witnesses who have examined the house with care and great detail and who refer to many instances where they claim the workmanship is not good. On the other hand, the defendants placed on the stand witnesses of experience in such matters who testified that outside of one or two instances, the work on the whole is reasonably good for the type of house that was being constructed.

After going over the mass of detail, the Court has come to the conclusion that the plaintiff is entitled to certain allowances in certain specific instances

where the work is not up to the proper standard. These might be referred to as follows:

The setting of the joists in the basement, while apparently of a recognized type of construction, is not of the best, and in one or two instances faulty. It has been estimated that repairs may be made there for $80, and the Court will allow this item.

The construction of the front steps of the house is not good. Either they were not properly constructed or the mortar used was defective. In any event, the steps and the buttresses connected therewith are in bad condition. Various witnesses have estimated that it would take from $75 to $300 to correct this situation. The Court believes that an allowance of $200 will be fair in this instance.

Over the front door of the house the brick work is crooked, giving a bad appearance to the exterior. Sums ranging from $20 to $170 have been given as estimates to correct this. The Court thinks that the sum of $20 is much too low and will allow $150 on this item.

It appears from the testimony that the roof leaked in certain places quite badly and the Court feels this is a situation for which the plaintiff is entitled to recover and will award the sum of $150 therefor, figures ranging from $50 to $190 having been given by the witnesses as the cost of repairing this defect.

Apparently, in the cellar, in order to correct the construction at one point, there should be iron columns and the Court will allow $20 for placing these.

Also in the cellar at one place there seems to be a bad leak. The defendants' witness says this is merely due to the outside grade but the plaintiff's witness says it may be due to trouble in the cellar wall. Figures ranging from $5 to $150 have been estimated on this item and the Court will allow $100 on this claim.

Further, it appears from the testimony that some of the joints in the brick work are not very good and that certain of the brick underpinning needs attention, and the Court will allow for this the sum of $100.

In the basement the defendant placed 11 doors made of rough boarding. In the Kane house second-hand doors were supplied. The Court believes that the plaintiff is entitled to some allowance on this. It would seem as though rough board doors are not suitable and the Court will allow $110 in this matter.

It appears without much dispute that when the defendants went away they left a broken water tank in one of the bath rooms, for which the plaintiff should be allowed $17, and there should be made an allowance of $15 for fixing part of the tiled floor in a bathroom so that the door will open properly.

Further, complaint was made immediately on the bronzing of the radiators, and the testimony tends to show that this work was carelessly done. The plaintiff should be allowed $74 on this item.

In the front hall the plastering and papering are not good. The defendants claim that in certain places the wall has been broken by persons moving furniture, but the Court does not believe this to be the situation. At one place there is a very pronounced bulge of both paper and plaster, and possibly the lathes. The Court is of the opinion that this wall should be repapered, for which the plaintiff is given an allowance of $48, and that considerable replastering and possibly fixing of the lathes may have to be attended to, and for this the Court will allow $200.

The sum total of these allowances for poor work on the part of the defendants amounts to $1264, which sum the Court finds is due the plaintiff from the defendants.

The plaintiff introduced testimony covering a great many other items, some small and some larger, which on the whole, after careful consideration, the Court does not feel he is entitled to have awarded him. Several of the small items perhaps need not be referred to. In any building slight troubles and imperfections are bound to occur. No contractor is obliged to guarantee perfect work. As long as he acts in a reasonably workmanlike manner, he performs his duties. Some settling and some cracking of plaster is, in the judgment of the Court, bound to occur in a new building, particularly under modern construction, where wood is not fully seasoned.

As to the general plastering about the house, the plaintiff's contention is that instead of a two coat job, only one coat was used. The testimony on this point is very conflicting, the defendants' witnesses claiming that the job was a two coat job. After weighing this, the Court believes that probably this was a two coat job, the last coat perhaps being rather thin. Considering the type of construction and the nature of the building, the Court has come to the conclusion that, on the whole, the plastering was reasonably good.

Certain defects are also claimed as to the paper hanging. The testimony here is also conflicting. Undoubtedly there are several minor instances in which the papering is more or less defective, but taking this work as a whole and again considering the nature of the building and the use to which it is to be put, the Court believes that the work was average work and that the plaintiff is not entitled to any claim for damages on this item.

The same general line of reasoning, it seems to the Court after weighing the testimony, applies to the general inside finish, and the work on the floors. None of this, undoubtedly, was of the highest grade, such as would be placed in an expensive private residence, but taken altogether, seems to the Court to be reasonably good for the purposes and uses intended.

The testimony tends to show that in the basement the ordinary fire-stopping had been inserted by the contractors and such as was found to be missing upon later examination apparently was due to the work of someone after the building was done.

The defendants contend in connection with the plaintiff's claim for damages that no allowance should be made because of the fact that he had on the job a Mr. Lockwood as a supervising architect. This man was a young architect who lived close by where the apartment house was being constructed and visited the work about twice a week for a short time in the early morning on behalf of the plaintiff. In the opinion of the Court, he can hardly be termed the supervising architect. He had nothing to do with the plans of the building, if there were any, and it would appear that his general authority was quite limited. It seems to the Court that he had little power to direct the work and that, at most, he was to watch or investigate in a general way the progress of the work and report to the plaintiff.

The defendants have made to the Court a request for special findings, which the Court will answer as follows: .

As to special finding No. 1, the Court will answer no. This being so, request No. 2 requires no answer.

As to 3a and 3b, the Court will answer yes, except in the instances indicated herein.

As to requests 4 and 5, the Court will answer no.

Decision for the plaintiff for $1264.

For plaintiff: Frank H. Bellin.

For defendant: Louis V. Jackvony.